# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

COREY JOHNSON,                    )
                                  )
        Plaintiff,                )
                                  )
v.                                )   Case No.  4:19-cv-00015-ACA-HNJ
                                  )
ANTWON KENDRICK, et al.,          )
                                  )
        Defendants.               )

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff filed a *pro se* complaint seeking monetary damages or injunctive relief pursuant to 42 U.S.C. § 1983 for violations of his civil rights.  Doc. 1.  Plaintiff names the following defendants in the complaint: Lieutenant Larry Baker and Correctional Officers Antwan Kendrick,[1] Carlos Wood,[2] Lauolefiso Jones, and Brandon Burns.[3]  *Id.* at 3.  Plaintiff seeks monetary relief.  *Id.* at 4.  In accordance with the usual practices of this court and 28 U.S.C. § 636(b)(1), the court referred the complaint to the undersigned magistrate judge for a preliminary report and recommendation.  *See McCarthy v. Bronson*,

---

[1] Incorrectly identified as Antwon Kendrick in the complaint.  Doc. 1 at 1, 3.

[2] Incorrectly identified as Curtis Woods in the complaint.  Doc. 1 at 1, 3.

[3] Plaintiff named Correctional Officer "Barnes or Burns" in his complaint.  Doc. 1 at 3.  On October 21, 2019, plaintiff filed a "Motion to Correct," in which he states he mistakenly named Correctional Officer Barnes as a defendant.  Doc. 24.  Plaintiff explained that he did not know whether the officer's last name was Barnes or Burns, so he included both names in his complaint.  *Id.*  On October 24, 2019, the court granted plaintiff's motion and dismissed Correctional Officer Barnes as a defendant.  Doc. 25.  Correctional Officer Brandon Burns remains a defendant.  *Id.*

500 U.S. 136 (1991). For the following reasons, the undersigned recommends the court grant the defendants' motion for summary judgment in part and deny it in part.

## I. Procedural History

On April 16, 2019, the undersigned entered an Order for Special Report, directing the Clerk to forward copies of the complaint to each of the named defendants and directing the defendants to file a Special Report addressing plaintiff's factual allegations within 60 days. Doc. 8. The undersigned advised the defendants that the Special Report could be submitted under oath or accompanied by affidavits and, if appropriate, the court would consider it as a motion for summary judgment filed pursuant to Rule 56 of the Federal Rules of Civil Procedure. *Id.* The defendants failed to respond to the Order for Special Report within the prescribed time.

On July 23, 2019, the undersigned entered a Second Order for Special Report, directing the defendants to respond to plaintiff's complaint within 60 days. Doc. 15. The defendants failed again to respond.[4] On September 24, 2019, the undersigned ordered the defendants to execute and return a waiver of service of process within 30 days and file a Special Report within 60 days or show cause why the court should not order formal service of process upon each defendant personally with costs taxed to that defendant. Doc. 16.

---

[4] The first and second Orders for Special Report were mailed to the defendants at St. Clair Correctional Facility and to the Office of General Counsel for the Alabama Department of Corrections. Doc. 8 at 8; Doc. 15 at 8.

On September 30, 2019, the defendants filed waivers of service. Docs. 17-21. On November 22, 2019, the defendants filed a Special Report, supplemented by affidavits and other evidence. Doc. 26. On January 23, 2020, the undersigned notified the parties that the court would construe the Special Report as a motion for summary judgment and notified the plaintiff that he had 21 days to respond to the motion for summary judgment by filing affidavits or other material. Doc. 28. The undersigned also advised plaintiff of the consequences of any default or failure to comply with Fed. R. Civ. P. 56. *Id. See Griffith v. Wainwright*, 772 F.2d 822, 825 (11th Cir. 1985). On February 12 and 13, 2020, plaintiff filed responses. Docs. 29, 31. This matter now proceeds before the court on the defendants' motion for summary judgment and the responses thereto.

## II. Standard of Review

Because the court has construed the defendants' Special Report as a motion for summary judgment, Federal Rule of Civil Procedure 56 governs the resolution of the motion. Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Chapman v. AI Transport,* 229 F.3d 1012, 1023 (11th Cir. 2000). The burden of proof rests upon the moving party to establish his prima facie entitlement to summary judgment by showing the absence of genuine issues of material

fact and that he is due to prevail as a matter of law. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Unless plaintiff, who carries the ultimate burden of proving his action, shows some evidence with respect to each element of his claim, all other issues of fact become immaterial, and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532-33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [citations omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532.

However, any "specific facts" pled in a *pro se* plaintiff's sworn complaint must be considered in opposition to summary judgment. *See Caldwell v. Warden, FCI Talladega,* 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because plaintiff is *pro se*, the court must construe the complaint more liberally than it would pleadings drafted by lawyers. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). A *pro se* pleading "is held to a less stringent standard than a pleading drafted by an attorney" and is liberally construed. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

### III. Summary Judgment Facts[5]

On September 13, 2018, Correctional Officer Kendrick, assigned as a Restrictive Housing Rover, was supervising inmates exercising on the walk yard. Doc. 26-2, Kendrick Aff. at 1. Plaintiff became aggressive and disruptive towards other inmates on the yard and began spitting and kicking. *Id.* Officer Kendrick removed plaintiff from the walk yard and, along with Sergeant Randall McGilberry, escorted plaintiff to his assigned cell. *Id.* Plaintiff claims Kendrick lied to officers and stated that plaintiff managed to free himself from his handcuffs and hit Kendrick on the head with an unknown object. Doc. 1 at 3.[6] Prison medical staff evaluated Kendrick and noted he sustained a six-inch laceration on the top of his head. Doc. 26-1 at 17, 28-30. Tammy Montgomery, Incident Report Manager, drove Kendrick to Saint Vincent's East Emergency Room where he received eight staples. Doc. 26-2, Kendrick Aff. at 1.[7]

---

[5] Based on the summary judgment standard, the following facts are undisputed or, if disputed, taken in a light most favorable to the non-moving party. Factual disputes are addressed in footnote form.

[6] In his response to the defendants' motion for summary judgment, plaintiff explains that he had an altercation with another inmate on September 13, 2018, on the A-exercise walk yard. Doc. 29 at 3. Plaintiff claims he "tried to spit on the inmate and a little got on Officer Kendrick." *Id.* He alleges Kendrick escorted him back to his cell and he and Kendrick became involved in a verbal exchange when Kendrick slapped him twice. *Id.* Plaintiff claims, "I told [Kendrick] to take [the handcuffs] off and slap me when I can defend myself." Doc. 29 at 5, Johnson Aff. Plaintiff claims Kendrick removed the handcuffs, and then he slapped Kendrick. Doc. 29 at 3. He alleges he and Kendrick had a "brief struggle" during which Kendrick picked him up and the two fell on plaintiff's bed, causing Kendrick to hit his head on the windowsill. *Id.* Plaintiff contends Kendrick left the cell and the cube operator closed his cell door. *Id.* Plaintiff reasons that Kendrick "concocted" a story to "cover" himself because Kendrick could not tell prison officials what actually occurred. Doc. 29 at 5, Johnson Aff.

[7] Officer Kendrick claims that while escorting plaintiff to his cell, plaintiff became verbally aggressive and threatening towards him. Doc. 26-2, Kendrick Aff. at 1. Kendrick states that when they arrived at plaintiff's cell, plaintiff refused to step into the cell. *Id.* Kendrick claims, "I placed my right hand

Supervisory personnel instructed Correctional Officers Jones, Wood, and Burns to report to the Restrictive Housing Unit to escort plaintiff to the infirmary for a medical evaluation due to his altercations with an inmate and Correctional Officer Kendrick. Doc. 26-3, Jones Aff. at 1; Doc. 26-4, Wood Aff. at 1; Doc. 26-5, Burns Aff. at 1. The officers, along with Lieutenant Baker, arrived at plaintiff's cell. *Id.* Plaintiff claims that due to Kendrick's false allegation that plaintiff hit him on the head, Jones, Wood, and Burns opened his cell door without first handcuffing him and began beating him with sticks and "iron batons." Doc. 1 at 3; Doc. 29 at 5-9, Johnson Affs. [8] [9] Plaintiff

---

in the center of his chest and as I was applying pressure to force him into the cell, he slipped free of his handcuffs and struck me on top of the head." *Id.* Kendrick states he immediately placed plaintiff face down on the bed. *Id.* Kendrick experienced a sharp, stabbing pain on the top of his head and observed a thick stream of blood flowing from his head. *Id.* Kendrick states plaintiff complied with orders to remain on the bed as officers exited and secured the cell. *Id.*

[8] Officer Jones states that Lieutenant Baker secured plaintiff in handcuffs through the tray door and signaled for Officer Henry to open plaintiff's cell door. Doc. 26-3, Jones Aff. at 1. Jones claims plaintiff was standing at the back of the cell when plaintiff's cell door opened. *Id.* Jones alleges plaintiff slipped his handcuffs and began swinging a broken wooden stick at Jones, Burns, and Wood as they entered his cell. *Id.* at 1-2. He states he and other officers gave loud verbal commands for plaintiff to drop the stick and lie face down on the floor "while simultaneously initiating hand and baton strikes." *Id.* at 2. Jones contends plaintiff remained combative and continued swinging the stick and kicking at officers. *Id.* Jones continued with hand strikes and giving verbal commands. *Id.* He gained control of plaintiff's right leg and pulled him onto the floor. *Id.* Jones claims plaintiff dropped the stick and quickly rolled over, face down on the floor. *Id.* Jones maintains officers immediately stopped all use of force. *Id.* Thereafter, officers restrained plaintiff and escorted him to the infirmary without further incident. *Id.*

[9] Officers Wood and Burns state that as they entered plaintiff's cell, plaintiff removed one handcuff and began swinging a stick at them. Doc. 26-4, Wood Aff. at 1; Doc. 26-5, Burns Aff. at 1. Wood and Burns claim they immediately drew their batons and ordered plaintiff to drop the stick, but he refused. *Id.* Wood and Burns allege they delivered baton strikes to plaintiff's forearms, shoulder, collar bone, and legs in an attempt to remove the stick from plaintiff's hand. *Id.* Wood claims when Officer Jones grabbed plaintiff's leg and pulled him to the floor, plaintiff dropped the stick and rolled over, face down. Doc. 26-4, Wood Aff. at 1. Wood and Burns state officers immediately stopped all use of force. Doc. 26-4, Wood Aff. at 1; Doc. 26-5, Burns Aff. at 1.

claims he "did nothing to provoke" the officers. Doc. 29 at 3. In addition, plaintiff states, "Contrary to the defendant[s'] affidavits, I did not have a stick in my possession at [any time] to swing at them." Doc. 29 at 3; Doc. 29 at 6-9, Johnson Affs. Plaintiff maintains Lieutenant Baker watched the officers assault plaintiff but failed to intervene to protect him. Doc. 1 at 3-4; Doc. 29 at 3.[10] Plaintiff claims when the officers moved him from the cell into the hallway, they continued to beat him with their batons. Doc. 29 at 3.

Nurse Wright examined plaintiff in the infirmary and noted that he had multiple lacerations to his head and a "mouth full of blood." Doc. 26-1 at 16. Wright also noted plaintiff's right arm was "deformed." *Id.* Photographs taken of plaintiff after the incident depict plaintiff bleeding from his head and blood on his clothing. Doc. 26-1 at 31-36. Dr. Walter Wilson examined plaintiff and determined he needed to be transported to UAB Hospital for further evaluation. Doc. 26-1 at 1; Doc. 26-7 at 12. Hospital staff diagnosed plaintiff with an acute nondisplaced transverse fracture of the right index finger metacarpal. Doc. 26-7 at 21. Plaintiff received staples to his head,

---

[10] Lieutenant Baker states that after he handcuffed plaintiff and Officer Henry opened plaintiff's cell door, plaintiff managed to slip out of one of his handcuffs, grab a wooden stick located in his cell, and violently swing the stick at officers as they entered his cell. Doc. 26-6, Baker Aff. at 1. Baker states officers ordered plaintiff several times to drop the stick, but he refused. *Id.* Baker asserts plaintiff "continued this violent behavior for a lengthy amount of time" before officers were able to restrain him on the floor. *Id.* Baker states he then ordered the officers to discontinue using force and that all officers complied. *Id.* Baker claims officers placed restraints on plaintiff and escorted him to the infirmary for treatment. *Id.*

sutures on his left hand, and a splint on his right arm.  Doc. 26-8 at 8.[11]   He was discharged from the hospital the same day and returned to the prison.  Doc. 26-1 at 1.

Prison officials charged plaintiff with violating Rule 903 – Assault with a weapon on a person(s) associated with ADOC.  Doc. 26-1 at 4.  On September 23, 2018, Hearing Officer Jacob Weaver conducted a disciplinary hearing and found plaintiff guilty based on Officer Kendrick's sworn testimony and injuries, Sergeant McGilberry's testimony that plaintiff assaulted Kendrick, and plaintiff's inability to prove his innocence because he failed to attend the hearing.  *Id.* at 5-6.  Weaver recommended the following sanctions: (1) loss of canteen, telephone, and visiting privileges for 60 days; (2) disciplinary segregation for 45 days; and (3) custody review.  *Id.* at 6.  On September 24, 2018, Warden Gary Malone approved Weaver's recommended sanctions.  *Id.*

## IV. Analysis

### A. Official Capacity Claims

To the extent plaintiff's constitutional claims are brought against the defendants in their official capacities for money damages, his claims warrant dismissal under the sovereign immunity doctrine.  The Eleventh Amendment to the United States Constitution bars 42 U.S.C. § 1983 claims against the state or an agency of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).  Likewise, Eleventh

---

[11] Plaintiff had no fracture or dislocation of his right forearm.  Doc. 26-7 at 23.

Amendment immunity also bars claims for money damages brought against officials and employees of state entities sued in their official capacities. *Id.* at 101-02.

Based on the foregoing, the court should grant defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary relief.

## B. Defendant Kendrick

Plaintiff alleges that on September 13, 2018, defendant Kendrick falsely accused plaintiff of maneuvering out of his handcuffs and hitting Kendrick over the head with an unknown object.   Doc. 1 at 3.   Plaintiff argues that as a result of Kendrick's false claim, defendants Jones, Wood, and Burns used excessive force against him. *Id.*

Plaintiff fails to state a claim for relief against defendant Kendrick.  Viewing the facts in a light most favorable to plaintiff, he alleges, at most,  defendant Kendrick lied to other officers, claiming plaintiff hit him over the head with an unknown object. Doc. 1 at 3.  However, an inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of certain conduct. *See Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986); *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989) (neither falsity of charges nor impropriety of officer's participation in grievance procedure, standing alone, state a constitutional claim). Thus, plaintiff's claim that defendant Kendrick falsely accused him fails to state a claim for relief.[12]

---

[12] While an inmate has no constitutional right from being falsely accused, an inmate does have a right not be deprived of a protected liberty interest without due process, including disciplinary changes in

Plaintiff later explains in his response to the defendants' motion for summary judgment that he and Kendrick engaged in a verbal altercation and defendant Kendrick slapped him twice while he was handcuffed.  Doc. 29 at 3; Doc. 29 at 5, Johnson Aff. Plaintiff claims he told defendant Kendrick to remove his handcuffs and to slap him again.  *Id.*  Plaintiff states defendant Kendrick removed his handcuffs and the two began to fight.  *Id.* Plaintiff asserts Kendrick hit his head on a windowsill as the two fell on a bed.  *Id.*

Although plaintiff's claim that Kendrick slapped him twice while he was handcuffed may state a plausible claim for excessive force, plaintiff failed to allege these facts in his complaint.  *See Dobbins v. Giles*, 451 F. App'x 849, 850-51, n.1 (11th Cir. 2012) (prison officer's alleged action of striking and slapping prisoner for no reason, if proven, was wanton and unnecessary despite no injury and officer was not entitled to qualified immunity from prisoner's excessive force claim).  Neither has plaintiff moved to amend his complaint to allege these facts, and a response to a motion for summary judgment does not constitute the proper method to amend a complaint.  *See Flintlock Const. Serv., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1227-28 (11th Cir. 2013).

---

his conditions of confinement that will inevitably affect the duration of his sentence or impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483-87 (1995); *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 1999). Nonetheless, plaintiff alleges no facts or cliams in his complaint regarding his placement in disciplinary segregation as a result of Kendrick's allegedly false charge.  Doc. 1.

In addition, plaintiff does not allege in his complaint that Kendrick joined in defendants Jones, Wood, and Burns's use of excessive force.  Doc. 1.  Indeed, plaintiff does not dispute that once Kendrick began bleeding, he exited plaintiff's cell and did not return with defendants Baker, Jones, Wood, and Burns.  Doc. 26-2, Kendrick Aff. at 1; Doc. 26-3, Jones Aff. at 1.  Neither does plaintiff allege Kendrick conspired with Jones, Wood, and Burns or otherwise knew they would use excessive force against plaintiff.  Because plaintiff fails to allege any claim for relief against defendant Kendrick, this defendant merits summary judgment in his favor.

## C. Defendants Jones, Wood, & Burns – Excessive Force

Plaintiff argues that as a result of defendant Kendrick's false claim that plaintiff hit him, defendants Jones, Wood, and Burns entered plaintiff's cell and used excessive force against him, causing him serious injury.  Doc. 1 at 3. Defendants Jones, Wood, and Burns's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims warrants denial. [13]

Plaintiff's excessive force allegations against these defendants proceed under the standard set forth by the United States Supreme Court in *Hudson v. McMillian*, 503 U.S. 1 (1992) and *Whitley v. Albers*, 475 U.S. 312 (1986).  *See Campbell v. Sikes*, 169 F.3d 1353, 1374-75 (11th Cir. 1999).  In *Hudson v. McMillian*, the Supreme Court held that in

---

[13] While plaintiff invokes both the Eighth and Fourteenth Amendment as causes of action, doc. 1 at 3, as a convicted prisoner, his excessive force claims arise solely under the Eighth Amendment.  *See Piazza v. Jefferson Cty., Ala.*, 923 F.3d 947, 952 (11th Cir. 2019).

assessing an inmate's excessive force claim, "the core judicial inquiry is that set out in

*Whitley*: whether force was applied in a good-faith effort to maintain or restore

discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6-7.  In

extending *Whitley* to all cases involving allegations of the use of force by prison officials,

the Supreme Court reasoned:

> Many of the concerns underlying our holding in *Whitley* arise whenever
> guards use force to keep order.  Whether the prison disturbance is a riot
> or a lesser disruption, corrections officers must balance the need "to
> maintain or restore discipline" through force against the risk of injury to
> inmates.  Both situations may require prison officials to act quickly and
> decisively.    Likewise, both implicate the principle that "'[p]rison
> administrators . . . should be accorded wide-ranging deference in the
> adoption and execution of policies and practices that in their judgment are
> needed to preserve internal order and discipline and to maintain
> institutional security.'"

*Hudson*, 503 U.S. at 6 (citations omitted).

With these concerns in mind, the Supreme Court set out certain factors that

courts should consider when evaluating whether force used was excessive.  These

factors include: (1) the need for application of force; (2) the relationship between that

need and the amount of force used; (3) the threat reasonably perceived by the

responsible official; (4) any efforts to temper the severity of a forceful response; and (5)

the extent of the injury suffered by the inmate. *Whitley v. Albers*, 475 U.S. at 321.

In applying the foregoing factors to the facts of a particular case, the Supreme

Court has instructed:

> That is not to say that every malevolent touch by a prison guard gives rise
> to a federal cause of action.  The Eighth Amendment's prohibition of

"cruel and unusual" punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort "'repugnant to the conscience of mankind.'"

*Hudson*, 503 U.S. at 9 (citations omitted).

To create a genuine issue of material fact, plaintiff must come forward with evidence from which a reasonable inference can be drawn that the defendant acted maliciously and sadistically. Generally, courts "do not second-guess prison officials on matters that they are better equipped to handle under the exigencies of an internal disturbance." *Wilson v. Blankenship*, 163 F.3d 1284, 1295 (11th Cir. 1998).

Plaintiff claims that due to Kendrick's false allegation that plaintiff hit him on the head, Burns, Wood, and Jones opened his cell door without first handcuffing him and began beating him with sticks and "iron batons." Doc. 1 at 3. Plaintiff alleges the officers subsequently handcuffed him behind his back and shackled him, moved him from the cell into the hallway, and continued to beat him with their batons. Doc. 29 at 3. Plaintiff claims he "did nothing to provoke" the officers and denies having a stick in his possession. Doc. 29 at 3; Doc. 29 at 6-9, Johnson Affs.

Construing the facts in a light most favorable to plaintiff, defendants Jones, Wood, and Burns intentionally and maliciously attacked plaintiff. Moreover, the officers did not need to use force to restore or maintain discipline at the time as plaintiff was doing "nothing to provoke" the officers; he was complying with their orders; and officers were able to restrain him. Doc. 29 at 3, 12.

13

On the other hand, defendant Jones states that after defendant Baker secured plaintiff in handcuffs and signaled for Officer Henry to open the cell door, plaintiff managed to slip his hand from one of the handcuffs and began swinging a broken stick at Jones, Burns, and Wood as they entered the cell. Doc. 26-3, Jones Aff. at 1-2. Jones states the officers gave loud verbal commands to plaintiff to drop the stick and lie face down on the floor "while simultaneously initiating hand and baton strikes." *Id.* at 2. Jones contends plaintiff remained combative and continued swinging the stick and kicking at officers. *Id.* Jones continued with hand strikes and giving verbal commands. *Id.* He gained control of plaintiff's right leg and pulled him onto the floor. *Id.* Jones claims plaintiff dropped the stick and quickly rolled over, face down on the floor. *Id.* Jones maintains officers immediately stopped all use of force. *Id.* Thereafter, officers restrained plaintiff and escorted him to the infirmary without further incident. *Id.*

Defendants Wood and Burns state that as they entered plaintiff's cell, plaintiff removed one handcuff and began swinging a stick at them. Doc. 26-4, Wood Aff. at 1; Doc. 26-5, Burns Aff. at 1. Wood and Burns claim they immediately drew their batons and ordered plaintiff to drop the stick, but he refused. *Id.* Wood and Burns state they delivered baton strikes to plaintiff's forearms, shoulder, collar bone, and legs in an attempt to remove the stick from plaintiff's hand. *Id.* Wood alleges when Jones grabbed plaintiff's leg and pulled him to the floor, plaintiff dropped the stick and rolled over, face down. Doc. 26-4, Wood Aff. at 1. Wood and Burns claim officers

14

immediately stopped all use of force.  Doc. 26-4, Wood Aff. at 1; Doc. 26-5, Burns Aff. at 1.

Prison medical staff examined plaintiff in the infirmary and noted that he had multiple lacerations to his head, a "deformed" right arm, and a "mouth full of blood." Doc. 26-1 at 16.  Photographs taken of plaintiff after the incident portray plaintiff bleeding from his head and blood on his clothing.  Doc. 26-1 at 31-36.  Prison officials transported plaintiff to UAB Hospital for further evaluation.  Doc. 26-1 at 1; Doc. 26-7 at 12.  Hospital staff diagnosed plaintiff with an acute nondisplaced transverse fracture of the index finger metacarpal.  Doc. 26-7 at 21.  Plaintiff received staples to his head, sutures on his left hand, and a splint on his right arm.  Doc. 26-8 at 8.

Assessing the credibility of the allegations rendered by plaintiff or a defendant extends beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996).  The facts presented by the parties demonstrate that a genuine dispute exists between plaintiff's and the defendants' version of the facts in connection with the events that transpired on September 13, 2018, and whether the defendants used excessive force against plaintiff.  Therefore, defendants Jones, Wood, and Burns's motion for summary judgment on plaintiff's Eighth Amendment excessive force claims warrants denial.

The defendants argue they are entitled to qualified immunity regarding plaintiff's excessive force claims.  Doc. 26 at 9-10.  "Qualified immunity offers complete

15

protection for government officials sued in their individual capacities if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quotation marks and citations omitted). To obtain qualified immunity, the government official "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (quotation marks and citations omitted). "Once the defendant establishes that he was acting within his discretionary authority, the burden shifts to plaintiff to show that qualified immunity is not appropriate." *Id.* Plaintiff must show that "(1) the defendant violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (footnote omitted).

There exists no dispute that the defendants were acting within the scope of their discretionary authority when they allegedly used excessive force against plaintiff on September 13, 2018. Because there exists a question of fact concerning whether the defendants used excessive force against plaintiff, the defendants are not entitled to qualified immunity. Specifically,

> a defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment, because the use of force "maliciously and sadistically to cause harm" is clearly established to be a violation of the Constitution . . . . There is simply no room for a qualified immunity defense when the plaintiff alleges such a violation. The only question, then, is whether plaintiff has alleged facts

16

sufficient to survive a . . . motion for summary judgment.  If he has done so, that is the end of    the inquiry.

*Skrtich v. Thornton*, 280 F.3d 1295, 1301 (11th Cir. 2002) (citations omitted).

Because plaintiff has alleged facts sufficient to survive a motion for summary judgment concerning his Eighth Amendment excessive force claims against defendants Jones, Wood, and Burns, the defendants' motion for summary judgment on the basis of qualified immunity warrant denial.

### D. Defendant Baker – Failure to Protect

Plaintiff maintains defendant Baker watched as defendants Jones, Wood, and Burns used excessive force against him but failed to intervene to protect him.  Doc. 1 at 3-4; Doc. 29 at 3. Defendant Baker's motion for summary judgment on plaintiff's Eighth Amendment failure to protect claim warrants denial.

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officers the duty to "take reasonable measures to guarantee the safety of the inmates" in their custody.  *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (internal quotation marks and citations omitted).  "'In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature.'" *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty.*

*Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).[14]   A constitutional violation occurs when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm.  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he . . . draw[s] th[at] inference."  *Farmer*, 511 U.S. at 837.  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not," is not sufficient to establish liability on the part of the official.  *Id.* at 838.  Furthermore, there must be a "'strong likelihood' of injury, 'rather than a mere possibility,' before an official's failure to act can constitute deliberate indifference."  *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (quoting *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990)).

Once a plaintiff establishes that an institutional official knew of a substantial danger or risk to an inmate, a plaintiff must then demonstrate that the official was deliberately indifferent to that risk.  "[A]n Eighth Amendment claimant need not show

---

[14] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842.   Deliberate indifference requires "a state of mind more blameworthy than negligence."  *Id.* at 835.   Finally, plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known danger or risk caused plaintiff's constitutional injury.  *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

"Prison correctional officers may be held directly liable under § 1983 if they fail or refuse to intervene when a constitutional violation occurs in their presence. However, in order for liability to attach, the officers must have been in a position to intervene." *Terry v. Bailey*, 376 F. App'x 894, 896 (11th Cir. 2010) (citing *Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998)).  Plaintiff has the burden of demonstrating that the defendant was in a position to intervene but failed to do so.  *Ledlow v. Givens*, 500 F. App'x 910, 914 (11th Cir. 2012) (citing *Hadley v. Gutierrez*, 526 F.3d 1324, 1330-31 (11th Cir. 2008)).

Plaintiff alleges that defendant Baker "stood by and watched" as defendants Jones, Wood, and Burns repeatedly struck him with batons and that Baker "did nothing to stop it." Doc. 1 at 3-4.  However, defendant Baker alleges plaintiff became violent and Jones, Wood, and Burns used only the amount of force necessary to make him comply with orders and to restrain him.  Doc. 26-6, Baker Aff. at 1.  Specifically, defendant Baker states that after he handcuffed plaintiff through the tray door, plaintiff

managed to slip out of one of his handcuffs, grab a wooden stick located in his cell, and violently swing the stick at officers as they entered his cell. *Id.* Baker states officers ordered plaintiff several times to drop the stick, but he refused. *Id.* Baker claims plaintiff "continued this violent behavior for a lengthy amount of time" before officers were able to restrain him on the floor. *Id.* Baker states he then ordered the officers to discontinue using force and all officers complied. *Id.*

As stated herein, it is well established that assessing the credibility of the allegations made by plaintiff or defendants is beyond the scope of a trial court's ruling on a motion for summary judgment. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *see also, Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742-43 (11th Cir. 1996). The facts presented by the parties show that a genuine dispute exists whether defendant Baker failed to intervene to protect plaintiff from officers' use of excessive force on September 13, 2018. Accordingly, defendant Baker's motion for summary judgment on plaintiff's Eighth Amendment failure to protect claim warrants denial.

Neither is Baker entitled to summary judgment on the basis of qualified immunity. Doc. 26 at 9-10. The parties do not dispute that defendant Baker was acting within the scope of his discretionary authority at the time of the incident on September 13, 2018. *See Jordan v. Doe*, 38 F.3d 1559, 1566 (11th Cir. 1994) ("discretionary authority" includes "all actions of a government official that (1) 'were undertaken pursuant to the performance of his duties,' and (2) were 'within the scope of his authority'") (quoting *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988)). Therefore, to defeat qualified

20

immunity, plaintiff must establish a genuine issue of material fact whether defendant Baker violated his constitutional rights.

As stated previously, plaintiff's version of the events establishes a question of fact whether defendant Baker violated plaintiff's constitutional rights by failing to intervene and protect him from other officers' use of excessive force. *See Skrtich v. Thornton,* 280 F.3d 1295, 1300-01 (11th Cir. 2002). Moreover, the duty of an officer to protect an individual from a fellow officer's use of excessive force had been clearly established for years prior to defendant Baker's alleged failure to intervene and protect plaintiff. *See Post v. City of Fort Lauderdale,* 7 F.3d 1552, 1560 (11th Cir. 1993), *as amended,* 14 F.3d 583 (11th Cir. 1994) ("A police officer has a duty to intervene when another officer uses excessive force."); *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1442 (11th Cir. 1985) ("[A]n officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance."). Because a factual dispute exists whether defendant Baker violated plaintiff's Eighth Amendment right by failing to intervene in Jones, Wood, and Burns's alleged use of excessive force, Baker does not merit qualified immunity at this juncture.

### V. Recommendation

For the reasons stated above, the undersigned **RECOMMENDS** the following:

1. The defendants' motion for summary judgment on plaintiff's claims against them in their official capacities for monetary relief be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE**;

2. The defendants' motion for summary judgment on plaintiff's claims against defendant Kendrick be **GRANTED** and the claims be **DISMISSED WITH PREJUDICE**;

3. The defendants' motion for summary judgment on plaintiff's Eighth Amendment excessive force claims against defendants Jones, Wood, and Burns be **DENIED**; and

4. The defendants' motion for summary judgment on plaintiff's Eighth Amendment failure to protect claim against defendant Baker be **DENIED**.

### VI. Notice of Right to Object

Any party may file specific written objections to this report and recommendation. A party must file any objections with the Clerk of Court within fourteen (14) calendar days from the date the report and recommendation is entered. Objections should specifically identify all findings of fact and recommendations to which objection is made and the specific basis for objecting. Objections also should specifically identify all claims contained in the complaint that the report and recommendation fails to address. Objections should not contain new allegations, present additional evidence, or repeat legal arguments. An objecting party must serve a copy of its objections on each other party to this action.

Failing to object to factual and legal conclusions contained in the magistrate judge's findings or recommendations waives the right to challenge on appeal those same conclusions adopted in the district court's order. In the absence of a proper objection, however, the court may review on appeal for plain error the unobjected to factual and legal conclusions if necessary in the interests of justice. 11th Cir. R. 3-1.

On receipt of objections, a United States District Judge will review *de novo* those portions of the report and recommendation to which specific objection is made and may accept, reject, or modify in whole or in part, the undersigned's findings of fact and recommendations. The district judge must conduct a hearing if required by law. Otherwise, the district judge may exercise discretion to conduct a hearing or otherwise receive additional evidence. Alternately, the district judge may consider the record developed before the magistrate judge, making an independent determination on the basis of that record. The district judge also may refer this action back to the undersigned with instructions for further proceedings.

A party may not appeal the magistrate judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may only appeal from a final judgment entered by a district judge.

**DONE** this 15th day of July, 2020.

_____
HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE

23